**(ORAL ARGUMENT NOT YET SCHEDULED)**
No. 22-5258

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————

SALINE PARENTS, an Unincorporated Association, et al.,
Plaintiffs-Appellants,

v.

MERRICK B. GARLAND, in his Official Capacity as Attorney General
of the United States,
Defendant-Appellee.

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

————————————

**BRIEF FOR DEFENDANT-APPELLEE**

————————————

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

MARK B. STERN
JOHN S. KOPPEL
*Attorneys, Appellate Staff*
*Civil Division, Room 7264*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-2495*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to District of Columbia Circuit Rule 28(a)(1), counsel for defendants-appellees hereby certifies the following information as to Parties, Rulings, and Related Cases:

## A.    Parties and Amici

Plaintiffs-appellants are: Saline Parents, an Unincorporated Association; Raelyn Davis; Xi Van Fleet; Joseph Carey Mobley; Michael Rivera; Shawntel Cooper; and Elicia Brand.  Defendant-appellee is Merrick B. Garland, in his official capacity as Attorney General of the United States.  There were no additional parties and no amici below.

## B.    Rulings Under Review

The rulings of the district court (Friedrich, J.) under review are the court's Memorandum Opinion and Order of September 23, 2022, Joint Appendix 36-46.

## C.    Related Cases

This case has not previously been before this Court.  Undersigned counsel is unaware of any related cases.

/s/ John S. Koppel
JOHN S. KOPPEL
Counsel for Defendant-Appellee

## GLOSSARY

AG – Attorney General

DE – Docket Entry

FBI – Federal Bureau of Investigation

JA – Joint Appendix

SJA – Supplemental Joint Appendix

# TABLE OF CONTENTS

**Page**

GLOSSARY

INTRODUCTION ....................................................................... 1

STATEMENT OF JURISDICTION ........................................... 4

STATEMENT OF THE ISSUES ............................................... 4

STATEMENT OF THE CASE ................................................... 5

    A.    Background ....................................................... 5

    B.    Plaintiffs' Lawsuit ........................................... 7

    C.    District Court Decision ................................... 11

SUMMARY OF ARGUMENT ................................................ 14

STANDARD OF REVIEW ..................................................... 17

ARGUMENT:
    THE DISTRICT COURT CORRECTLY DISMISSED
    PLAINTIFFS' LAWSUIT ................................................. 18

    A.    The District Court Correctly Held That Plaintiffs
        Failed To Plead A Cognizable Injury In Fact ....... 18

    B.    Plaintiffs Also Fail To Meet The Requirements
        Of Traceability And Redressability Or To Present
        A Ripe Controversy ........................................ 33

CONCLUSION ....................................................................... 40

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                           **Page(s)**

*Abbott Labs. v. Gardner,*
   387 U.S. 136 (1967) ................................................................36-37

*Action All. of Senior Citizens of Greater Phila. V. Heckler,*
   789 F.2d 931 (D.C. Cir. 1986) .............................................. 39

*Act Now to Stop War & End Racism Coal. v. District of Columbia,*
   589 F.3d 433 (D.C. Cir. 2009) .............................................. 23

*Advanced Mgmt. Tech., Inc. v. Federal Aviation Admin.,*
   311 F.3d 633 (D.C. Cir. 2000) ........................................... 30

*Aetna Life Ins. Co. of Hartford v. Haworth,*
   300 U.S. 227 (1937) ............................................................ 37

*American Hosp. Ass'n v. Azar,*
   895 F.3d 822 (D.C. Cir. 2018) ........................................... 17

*Arpaio v. Obama,*
   797 F.3d 11 (2015) ............................................................... 18

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................. 19

*Atlantic States Legal Found. v. Envtl. Prot. Admin.,*
   325 F.3d 281 (D.C. Cir. 2003) .............................................. 39

*Banneker Ventures, LLC v. Graham,*
   798 F.3d 1119 (D.C. Cir. 2015) ........................................... 5

*Center for Bio-Ethical Reform, Inc. v. Napolitano,*
   648 F.3d 365 (6th Cir. 2011) ....................................... 27, 31

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ......................................... 18, 20, 25-26

*Devia v. Nuclear Regulatory Comm'n,*
   492 F.3d 421 (D.C. Cir. 2007) ................................. 37, 38, 39

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.,*
   438 U.S. 59 (1978) ............................................................... 38

*Federal Express Corp. v. U.S. Dep't of Commerce*,
    39 F.4th 756 (D.C. Cir. 2022) ............................................................ 29

*Get Outdoors II, LLC v. City of San Diego*,
    506 F.3d 886 (9th Cir. 2007) ............................................................ 35

*Green v. U.S. Dep't of Justice*,
    54 F.4th 738 (D.C. Cir. 2022) ............................................... 20, 23, 24

*Hemp Indus. Ass'n v. Drug Enf't Admin.*,
    36 F.4th 278 (D.C. Cir. 2022) ................................................... 20, 25

*Islamic Am. Relief Agency v. Gonzales*,
    477 F.3d 728 (D.C. Cir. 2007) .................................................. 19, 28

*Kareem v. Haspel*,
    986 F.3d 859 (D.C. Cir. 2021) ......................................... 18, 19, 28, 31

*Keene v. Smith*,
    569 F. Supp. 1513 (E.D. Cal. 1983) .................................................. 32

*Laird v. Tatum*,
    408 U.S. 1 (1972) ................................................... 12, 15, 20, 21, 22

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ......................................................................... 34

*Matthew A. Goldstein, PLLC v. U.S. Dep't of State*,
    851 F.3d 1 (D.C. Cir. 2017) .............................................................. 24

*McInnis-Misenor v. Maine Med. Ctr.*,
    319 F.3d 63 (1st Cir. 2003) ......................................................... 37, 38

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ......................................................................... 36

*Meese v. Keene*,
    481 U.S. 465 (1987) ......................................................................... 32

*National Park Hosp. Ass'n v. Department of the Interior*,
    538 U.S. 803 (2003) .......................................................... 36-37, 38, 39

*Ohio Forestry Ass'n v. Sierra Club*,
    523 U.S. 726 (1998) ......................................................................... 39

*Oneida Indian Nation v. U.S. Dep't of the Interior*,
   789 F. App'x 271 (2d Cir. 2019) ........................................................ 30

*R.A.V. v. City of St. Paul*,
   505 U.S. 377 (1992) ............................................................... 5-6, 34

*Renne v. Geary*,
   501 U.S. 312 (1991) ...................................................................... 35

*Reporters Comm. for Freedom of the Press v. FBI*,
   877 F.3d 399 (D.C. Cir. 2017) ........................................................ 26

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ........................................................................ 36

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ............................................. 12, 15, 20, 21, 25, 36

*Texas v. United States*,
   523 U.S. 296 (1998) ................................................................. 36, 38

*Toilet Goods Ass'n v. Gardner*,
   387 U.S. 158 (1967) ...................................................................... 38

*Town of Chester v. Laroe Estates, Inc.*,
   581 U.S. 433 (2017) ...................................................................... 18

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ................................................................... 18

*Trump v. New York*,
   141 S. Ct. 530 (2020) .................................................................... 36

*Union of Concerned Scientists v. U.S Dep't of Energy*,
   998 F.3d 926 (D.C. Cir. 2021) ............................................... 19-20, 25

*U.S. Telecom Ass'n v. Federal Commc'ns Comm'n*,
   825 F.3d 674 (D.C. Cir. 2016) ........................................................ 23

*Vengalattore v. Cornell Univ.*,
   36 F.4th 87 (2d Cir. 2022) ......................................................... 35-36

*Virginia v. Black*,
   538 U.S. 343 (2003) ............................................................. 5, 23, 34

*Woodhull Freedom Found. v. United States,*
  948 F.3d 363 (D.C. Cir. 2020) ...................................................... 11, 20

**Statutes:**

28 U.S.C. § 1291 ................................................................................ 4

28 U.S.C. § 1331 ................................................................................ 4

28 U.S.C. § 1343(a)(4) ...................................................................... 4

28 U.S.C. § 1346 ................................................................................ 4

**Rules:**

Fed. R. App. P. 4(a)(1)(B) ............................................................... 4

Fed. R. Civ. P. 12(b)(1) .................................................................... 11

Fed. R. Civ. P. 12(b)(6) .................................................................... 11

## INTRODUCTION

On October 4, 2021, the Attorney General (AG) sent a one-page memorandum to various Department of Justice (Department) components noting "a disturbing spike in harassment, intimidation, and threats of violence against school administrators, board members, teachers, and staff."  Docket Entry (DE) 10-2, Supplemental Joint Appendix (SJA) 2 (Memorandum).  The Memorandum described the Department's "commitment to protect all people in the United States from violence, threats of violence, and other forms of intimidation and harassment." *Id*.  The Memorandum also noted the important distinction between constitutionally protected speech and actual "threats of violence or efforts to intimidate." *Id*.

The Memorandum did not announce any new regulations or purport to establish or impose any requirements outside of the Department.  Instead, the Memorandum stated that the Department takes violence and threats of violence seriously" and that the Department would announce future measures "designed to address the rise in criminal conduct directed toward school personnel."  SJA 2.  The Memorandum instructed Department staff to meet with federal, state,

local, Tribal, and territorial leaders to discuss "strategies for addressing threats" against school officials and to "open dedicated lines of communication" to address any such threats. *Id.* The Federal Bureau of Investigation (FBI) subsequently sent an internal email stating that it had created what it calls a "threat tag" for internal tracking of "investigations and assessments of threats specifically directed against" school officials. DE 10-3, SJA 4 (FBI email). This would assist the FBI in understanding the scope of such threats of violence and "provide an opportunity for comprehensive analysis" of the issue and "engagement" with "law enforcement partners." *Id.*

Plaintiffs are an unincorporated association and six individuals who state that they oppose certain policies instituted by their two local school districts. They allege that they have done so through statements at school board meetings, social media posts, and other forms of peaceful protest. And they expressly disclaim any intention to threaten violence and state that they intend only to engage in constitutionally protected speech.

The Attorney General's Memorandum, which does not impose any restrictions, makes clear that peaceful speech of the kind described by

2

plaintiffs' complaint is fully protected by the Constitution. In bringing this suit, plaintiffs nonetheless posit that the Department of Justice has adopted an unlawful policy to inhibit their speech because they oppose certain school practices, that they have been labeled "domestic terrorists," and that this has a "chilling" effect on their lawful conduct. Plaintiffs' Brief (Pl. Br.) 11-12.

The district court correctly held that plaintiffs have not pleaded any injury that could give rise to a justiciable controversy. The court explained that neither the Attorney General's Memorandum nor the FBI email imposes restrictions on anyone, let alone on those who exercise their First Amendment rights. And these documents make clear that they reflect concerns about violence and threats of violence, not any type of constitutionally protected speech. Plaintiffs' attempt to establish standing on the basis of reputational injury was similarly unavailing. As the court explained, the Attorney General did not label plaintiffs "terrorists" and they cannot allege otherwise.

Although the district court dismissed plaintiffs' suit for lack of subject matter jurisdiction, most of plaintiffs' brief simply reiterates various merits arguments that formed no part of the district court's

3

ruling.  And the six pages of their brief that plaintiffs devote to the question of standing only underscore the correctness of the district court's holding (which can also be sustained under the causation and redressability prongs of the Article III standing test, as well as under the doctrine of ripeness).

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), and 1346.  First Am. Compl. ¶ 5, JA 7.  The district court entered final judgment on September 23, 2022.  Mem. Op., DE 16, JA 37-46; Order, DE 15, JA 36.  Plaintiffs filed a timely notice of appeal on September 26, 2022.  Notice of Appeal, DE 17, JA 47; *see* Fed. R. App. P. 4(a)(1)(B).  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

**1.**  Whether, as the district court held, plaintiffs lack standing because they have not sufficiently pleaded an injury in fact, and whether they have likewise failed to demonstrate that asserted injuries are traceable to conduct by defendants or redressable by a court order.

**2.**  Whether plaintiffs' claims are ripe.

## STATEMENT OF THE CASE

### A. Background

On October 4, 2021, the Attorney General sent a one-page memorandum to various Department of Justice components titled "Partnership Among Federal, State, Local, Tribal, and Territorial Law Enforcement to Address Threats Against School Administrators, Board Members, Teachers, and Staff." SJA 2.[1]  The Memorandum noted "a disturbing spike in harassment, intimidation, and threats of violence against school administrators, board members, teachers, and staff who participate in the vital work of running our nation's public schools." *Id.* It further explained that "[w]hile spirited debate about policy matters is protected under our Constitution, that protection does not extend to threats of violence or efforts to intimidate individuals based on their views." *Id.  See generally Virginia v. Black*, 538 U.S. 343, 358-360 (2003) (distinguishing between constitutionally protected speech and "true threats" or "threats of violence"); *R.A.V. v. City of St. Paul*, 505 U.S. 377,

---

[1] At the motion to dismiss stage, a court "may consider a document that a complaint specifically references." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015).

5

388 (1992) (explaining that "threats of violence are outside the First Amendment").

The Memorandum stated that the Department of Justice would "announce a series of measures designed to address the rise in criminal conduct directed toward school personnel." SJA 2. Emphasizing the importance of "[c]oordination and partnership with local law enforcement," the Memorandum directed Department of Justice personnel to "convene meetings with federal, state, local, Tribal, and territorial leaders," noting that the "meetings will facilitate the discussion of strategies for addressing threats against school administrators, board members, teachers, and staff, and will open dedicated lines of communication for threat reporting, assessment, and response." *Id.*

On October 20, 2021, the FBI Criminal Investigation Division and Counterterrorism Division sent an internal email to various FBI officials regarding the concerns identified in the Attorney General's Memorandum. *See* First Am. Compl. ¶¶ 84-86, JA 22-23; *see also* SJA 3-5. The email stated that the FBI "share[s] an obligation to ensure all individuals[, including school staff,] are able to do their jobs without

threats of violence or fear for their safety." SJA 4. The email also stated that the FBI had created what it calls a "threat tag" in order "to track instances of related threats." *Id*. The email directed FBI offices to "apply the threat tag to investigations and assessments of threats specifically directed against school board administrators, board members, teachers, and staff," in order to "scope this threat on a national level and provide an opportunity for comprehensive analysis of the threat picture." *Id*.

## B. Plaintiffs' Lawsuit

**1.** Plaintiffs are an "unincorporated association of parents" and six parents who reside in Saline, Michigan or Loudoun County, Virginia. *See* Mem. Op. 2, JA 38 (citing First Am. Compl. ¶¶ 9-37, JA 7-13). Plaintiffs state that they oppose "'"progressive' policies and curricula'" in their respective school districts[.]" Mem. Op. 2, JA 38 (citing First Am. Compl. ¶¶ 11, 13, 16, 20, 22, 24, 26, 35, JA 7-10, 12). They allege that:

> their advocacy has included making public statements of opposition at school board meetings, such as 'clapping instead of using "jazz hands,"' leading efforts to recall school board members by 'collecting signatures, writing letters, and attending press conferences,' initiating a student walk out, posting on social media, and organizing a 'shoe drop protest, where hundreds of shoes were left in front of' school administrative offices.

7

Mem. Op. 2-3, JA 38-39 (citations omitted) (quoting First Am. Compl. ¶¶
12, 27, 30, 32, 34, 35, 36, JA 8, 10-13).  In summarizing plaintiffs' account
of their activities, the district court noted that:

> plaintiffs explicitly state that their activities did not include
> "widespread threat of criminal violence," and that their
> meetings with school officials "involve[d] [only] private
> citizens expressing their opposition to harmful policies being
> considered by government officials . . . as is their right to do
> under the First Amendment."

Mem. Op. 3, JA 39 (alterations in original) (quoting First Am. Compl. ¶
65, JA 18).

Relying chiefly on the Attorney General's Memorandum and the
FBI email, plaintiffs allege that the Department of Justice has adopted a
policy "to use federal law enforcement resources to silence parents and
other private citizens who publicly object to and oppose the . . . policies of
the 'progressive' Left that are being implemented . . . in public school
districts" such as Saline and Loudoun County.  First Am. Compl. ¶ 2,
JA 6.  They allege that the purported policy "criminalize[s]" their speech,
thereby chilling their "opposition and outrage to 'progressive' school
board curricula and policies."  *Id.* ¶¶ 88, 94, JA 23, 25.

Plaintiffs state that "[a]s a direct result of the challenged AG Policy,

[they] have been labeled and targeted as domestic terrorists by the Attorney General of the United States." First Am. Compl. ¶ 38, JA 13; *see also id.* ¶¶ 65, 66, 79, 93, 94, JA 18, 21, 24-25 (same or similar). Plaintiffs allege no facts to support that conclusion; their complaint appears to allege only that a private organization, not the Department of Justice, once likened certain threats to domestic terrorism. *See* First Am. Compl. ¶¶ 93-94, JA 24-25.

Plaintiffs additionally allege that "pursuant to the AG Policy, federal agents in marked and unmarked vehicles were present at a school board meeting held in Fairfax, Virginia," on or about October 21, 2021. First Am. Compl. ¶ 87, JA 23. Plaintiffs specifically reference—and include a photograph of—"a marked Homeland Security vehicle present outside of this school board meeting." *Id.* Plaintiffs do not allege that they are residents of Fairfax County or were present at that meeting. Nor do they make any allegations about what was being discussed at that meeting or otherwise connect the presence of that Department of Homeland Security vehicle to the asserted "AG Policy."

**2.** Plaintiffs assert claims under the First and Fifth Amendments as well as the Religious Freedom Restoration Act. Their First

9

Amendment claim asserts that the purported policy is an impermissible "content- and viewpoint-based restriction on speech," First Am. Compl. ¶ 109, JA 28, that vests government officials with "broad powers of censorship, in the form of a 'heckler's veto,'" *id.* ¶ 111, JA 29. *See also id.* ¶ 112, JA 29 ("The AG Policy permits local school boards and school officials as well as government agents and officials to censor, chill, and otherwise restrict [p]laintiffs' speech based on the content and viewpoint expressed by [p]laintiffs' message in violation of the First Amendment."). Plaintiffs claim that the Department violated the Fifth Amendment's guarantee of equal protection by allegedly "targeting" plaintiffs "because of their political ideology and religious beliefs," while permitting violence by those who "promote the 'progressive' agenda." *Id.* ¶¶ 121, 122, JA 30. Plaintiffs' other Fifth Amendment claim asserts that the purported policy "unreasonably interferes with the liberty of parents and guardians[] . . . to direct the upbringing and education of their children under their control in violation of the Fifth Amendment." *Id.* ¶ 127, JA 31. And plaintiffs claim that the asserted policy substantially burdens their exercise of religion. *Id.* ¶ ¶ 132-134, JA 32.

10

## C.  District Court Decision

The government moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and alternatively for failure to state a claim under Rule 12(b)(6).  *See* DE 10-1.

On September 23, 2022, the district court granted the government's motion to dismiss for lack of jurisdiction, holding that plaintiffs failed to satisfy the injury-in-fact requirement of Article III standing. *See* Mem. Op 1, 5, JA 37, 41; Order, JA 36.  The court explained that plaintiffs "contend they suffer two harms"— a chilling effect on their speech and religious exercise and an asserted "reputational harm"—and that neither one "satisfies the injury-in-fact requirement."  Mem. Op. 5, JA 41.  The court did not address any of the government's other arguments.

The court explained that to establish a cognizable "chill," plaintiffs must "plead facts establishing that 'the threatened enforcement of a law is sufficiently imminent.'" Mem. Op. 6, JA 42 (quoting *Woodhull Freedom Found. v. United States*, 948 F.3d 363, 370 (D.C. Cir. 2020)).  To do so, plaintiffs must properly allege that "their 'intended future conduct'" is "arguably proscribed by the law they wish to challenge" and that "the

11

threat of future enforcement" is "substantial."  *Id.* (alteration omitted) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162-164 (2014)).  The court concluded that plaintiffs failed to meet both of these requirements.

The district court explained that "[t]he alleged AG Policy does not 'arguably proscribe[]' plaintiffs' conduct" because any such policy "is not 'regulatory, proscriptive, or compulsory in nature.'"  Mem. Op. 6, JA 42 (second alteration in original (first quoting *Susan B. Anthony List*, 573 U.S. at 162, and then quoting *Laird v. Tatum*, 408 U.S. 1, 11 (1972)).  The court observed that "[n]one of the documents" identified by plaintiffs establishes "an imminent threat of future legal actions against anyone, much less the plaintiffs."  Mem. Op. 6-7, JA 42-43.  Neither the Attorney General's October 4, 2021, Memorandum nor the FBI's ensuing internal email of October 20, 2021, required "any particular regulatory or enforcement action."  Mem. Op. 7, JA 43.  Rather, they "announced a plan to 'announce a series of measures' in the future" and directed various efforts to track and coordinate about the problem of violent threats.  *Id.*

The court additionally explained that "even if the alleged policy contained any kind of restriction, regulation, or proscription, it would not

12

apply to the plaintiffs' conduct." Mem. Op. 7, JA 43. The court observed that plaintiffs "emphasize that they intend to engage only in 'constitutionally protected conduct'" and "never 'threat[s] of criminal violence.'" *Id.* (quoting First Am. Compl. ¶¶ 39, 65, JA 13, 18) (alteration in original). Because the Attorney General's Memorandum and the FBI email make clear that they are directed only at criminal conduct involving true threats of violence or unlawful intimidation, the court reasoned, "none of the plaintiffs' conduct, which is limited to constitutionally protected speech, falls within the scope of the alleged policy." Mem. Op. 8, JA 44. For similar reasons, the court found no basis for plaintiffs' assertion that they are the "'subjects'" of the purported AG Policy, and that they have been targeted for investigation and data collection. *See* Mem. Op. 8-9, JA 44-45.

The district court next held that plaintiffs have not properly alleged any "reputational harm." Mem. Op. 9-10, JA 45-46. The court reiterated that "the Attorney General's memorandum does not apply to the plaintiffs' activities, and even if it did, the policy does not label anyone a domestic terrorist, as the plaintiffs suggest." Mem. Op. 9, JA 45. "Nor does it create a reputational association." *Id.*

13

The court observed that plaintiffs did not buttress their assertion of injury by relying on a letter dated September 29, 2021, from the National School Board Association to the White House that "raised concerns about 'acts of malice, violence, and threats against public school officials' and character[iz]ed these 'heinous actions' as 'equivalent to a form of domestic terrorism.'" Mem. Op. 9, JA 45. The court explained that "the letter cannot fairly be interpreted as directed at the plaintiffs' activities," and that, in any event, "the letter cannot plausibly be considered part of the alleged policy, much less 'the sole basis for the AG Policy.'" *Id.* The court emphasized that "[t]he letter was sent by a private entity unaffiliated with the Attorney General, and the Attorney General's October 4 memorandum does not even mention the letter." *Id.*

## SUMMARY OF ARGUMENT

The district court correctly dismissed plaintiffs' complaint for lack of standing and, in the absence of subject matter jurisdiction, had no basis for addressing the merits of their claims. Plaintiffs nevertheless devote the first 35 pages of their Argument to the merits of their claims and address the ground of the district court's decision only in the final six pages of their brief. That cursory discussion confirms the correctness of

14

the district court's ruling, and, like the district court, we address only plaintiffs' demonstrable failure to satisfy the fundamental requirements of Article III.

**A.** The district court correctly held that plaintiffs failed to allege an injury in fact that would satisfy the minimum requirements of Article III standing. Plaintiffs allege that their peaceful speech objecting to school policies is chilled by a purported Department of Justice policy that in some way targets them based on their viewpoint. The alleged AG Policy does not "arguably proscribe[]" plaintiffs' conduct, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014) (quotation marks omitted), because it is not "regulatory, proscriptive, or compulsory in nature," *Laird v. Tatum*, 408 U.S. 1, 11 (1972). And even if it were, the policy does not apply to plaintiffs' constitutionally protected conduct.

The district court explained that plaintiffs make no concrete factual allegation about any rule or policy that purports to direct or forbid any conduct whatsoever or that could bear on plaintiffs' intended conduct. The October 4, 2021, Memorandum of the Attorney General that constitutes the principal basis of the "policy" challenged in this suit responded to "a disturbing spike in harassment, intimidation, and

15

threats of violence against school administrators, board members, teachers, and staff who participate in the vital work of running . . . public schools." *See* SJA 2.  The Memorandum announced that the Department would "announce a series of measures designed to address [this] rise in criminal conduct directed toward school personnel." *Id.*  It also directed Department officials to convene meetings with state, local, Tribal, and territorial governments to "facilitate the discussion of strategies for addressing threats against school administrators, board members, teachers, and staff." *Id.*  The Memorandum directs no enforcement action and is concerned only with the sorts of violence and threats of violence that plaintiffs disclaim.

The other document on which plaintiffs rely is an internal FBI email that created a new "threat tag" and instructed agents to apply that tag "to investigations and assessments of threats specifically directed against school board administrators, board members, teachers, and staff." *See* SJA 4.  The email also directed no enforcement action, and like the Memorandum, it was concerned only with specific threats, not with plaintiffs' alleged conduct.

For similar reasons plaintiffs have not demonstrated standing to

16

pursue a claim of reputational injury. As the district court recognized, "the Attorney General's memorandum does not apply to the plaintiffs' activities, and even if it did, the policy does not label anyone a domestic terrorist, as the plaintiffs suggest[.]" Mem. Op. 9, JA 45 (citing First Am. Compl. ¶¶ 38, 65, JA 13, 18). "Nor does it create a reputational association." *Id.*

**B.** Like the district court, this Court need not address the other prerequisites for standing or the related question of ripeness. Were the Court to do so, however, it is evident that plaintiffs have also failed to allege any injury that is traceable to the federal government or that a court could redress their asserted injuries, much less an issue that is the proper subject of judicial review under fundamental principles of ripeness.

## STANDARD OF REVIEW

The district court's dismissal for lack of subject matter jurisdiction is subject to de novo review. *See American Hosp. Ass'n v. Azar*, 895 F.3d 822, 825 (D.C. Cir. 2018).

17

**ARGUMENT**

**THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS' SUIT**

## A.    The District Court Correctly Held That Plaintiffs Failed To Plead A Cognizable Injury In Fact.

"The law of Art[icle] III standing is built on a single basic idea—the idea of separation of powers." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quotation marks omitted). It "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Town of Chester v. Laroe Estates*, Inc., 581 U.S. 433, 438 (2017) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)). To establish standing, a plaintiff must properly allege an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021) (quoting *Clapper*, 568 U.S. at 409).

In evaluating standing, courts accept "well-pleaded factual allegations as true," but "threadbare recitals" and "conclusory statements" "do not suffice." *Kareem*, 986 F.3d at 865-866 (alteration omitted) (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (2015)). Courts "do

18

not assume the truth of legal conclusions." *Id.* at 866. Nor do courts "accept inferences that are unsupported by the facts set out in the complaint." *Id.* (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)). Instead, "a complaint must contain sufficient factual matter, accepted as true" to establish a theory of standing "that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The district court correctly held that plaintiffs failed to allege an injury that is concrete, particularized, and actual or imminent. Plaintiffs assert that they have established such a cognizable injury on the basis of allegations that a purported Justice Department policy has chilled their speech and injured their reputation. The district court rightly rejected both theories of standing.

**1. a.** The district court properly recognized that plaintiffs' alleged chilling injury rests on unsupported speculation about future, unspecified, government enforcement actions. In order to base standing on an asserted future injury, the "threatened injury must be 'certainly impending' or there has to be a 'substantial risk that the harm will occur.'" *Union of Concerned Scientists v. U.S Dep't of Energy*, 998 F.3d

926, 929 (D.C. Cir. 2021). "[A]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm[.]" *Clapper*, 568 U.S. at 418 (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)); *see Hemp Indus. Ass'n v. Drug Enf't Admin.*, 36 F.4th 278, 292-293 (D.C. Cir. 2022). And plaintiffs "cannot manufacture standing . . . based on their fears of hypothetical future harm," *Clapper*, 568 U.S. at 416, or "by claiming that they experienced a 'chilling effect' that resulted from a governmental policy that does not regulate, constrain, or compel any action on their part," *id.* at 419.

Consequently, when plaintiffs assert standing based on a purported chill of their constitutional rights, they must establish that their conduct has been "proscribed" by the policy they wish to challenge and that "'there exists a credible threat of prosecution thereunder.'" *Green v. U.S. Dep't of Justice*, 54 F.4th 738, 744 (D.C. Cir. 2022) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)); *see Woodhull Freedom Found. v. United States*, 948 F.3d 363, 370-371 (D.C. Cir. 2020). The district court recognized that plaintiffs have failed to satisfy these requirements.

20

**b.** Plaintiffs have not properly alleged that their conduct is proscribed by the policy they wish to challenge "for two independent reasons." Mem. Op. 6, JA 42.

First, "[t]he alleged AG Policy does not 'arguably proscribe[]' plaintiffs' conduct, because it is not 'regulatory, proscriptive, or compulsory in nature.'" Mem. Op. 6, JA 42 (second alteration in original) (citation omitted) (first quoting *Susan B. Anthony List*, 573 U.S. at 162, and then quoting *Laird v. Tatum*, 408 U.S. at 11). As the district court observed, "[n]one of the documents that the plaintiffs allege establish the policy create an imminent threat of future legal actions against anyone, much less the plaintiffs." Mem. Op. 6-7, JA 42-43. The Attorney General's Memorandum "simply announced a plan to 'announce a series of measures' in the future and directed the FBI to convene meetings with leaders in each federal judicial district." Mem. Op. 7, JA 43 (quoting Memorandum, SJA 2). "At most, it charged the FBI with 'open[ing] dedicated lines of communication for threat reporting, assessment, and response' at these meetings, without requiring any particular regulatory or enforcement action." *Id.* (alteration in original) (quoting Memorandum, SJA 2). Holding inter-governmental meetings and

21

contemplating the issuance of future policies or undefined future actions is not a "regulatory, proscriptive, or compulsory" "exercise of governmental power," as required for a claim of chilling injury. *Laird*, 408 U.S. at 11.

Similarly, the FBI's October 20 internal email merely "created a new threat tag to track threats against school officials and listed a few guidelines along which to evaluate those threats." Mem. Op. 7, JA 43 (citing FBI email at 2, SJA 4). The email created no requirement to take any particular action in response to a threat labeled with the new tag. *See id.* The court also observed that "plaintiffs' photo of one marked Homeland Security vehicle outside a school board meeting—in a city that is neither Saline nor in Loudoun County—does not plausibly establish an inference that the Attorney General has taken or intends to take any kind of enforcement action." *Id.* (citing First Am. Compl. ¶ 87, JA 23).

Second, plaintiffs also fail the "arguably proscribe" requirement because "even if the alleged policy contained any kind of restriction, regulation, or proscription, it would not apply to the plaintiffs' conduct." Mem. Op. 7, JA 43. A pre-enforcement challenge like this one requires "a credible statement by the plaintiff of intent to commit violative acts[.]"

22

*U.S. Telecom Ass'n v. Federal Commc'ns Comm'n*, 825 F.3d 674, 739 (D.C. Cir. 2016) (quoting *Act Now to Stop War & End Racism Coal. v. District of Columbia*, 589 F.3d 433, 435 (D.C. Cir. 2009)). Thus, even when a law imposes some restriction, if the plaintiff's "intend[ed]" or "proposed course of conduct would not run afoul" of that prohibition, the plaintiff could not have standing. *Green*, 54 F.4th at 744.

As the district court understood, plaintiffs' allegations describe speech that forms part of what the Attorney General's Memorandum itself characterizes as the "spirited debate about policy matters" that "is protected under our Constitution." Memorandum, SJA 2; *see generally Virginia v. Black*, 538 U.S. 343, 358-360 (2003) (distinguishing between constitutionally protected speech on the one hand and "true threats" or "threats of violence" on the other) (alteration omitted) (quotation marks omitted). Similarly, "the FBI's internal email applies a new threat tag only to '*threats* specifically directed against school board administrators, board members, teachers, and staff.'" Mem. Op. 8, JA 44 (quoting FBI email at 2, SJA 4). Plaintiffs do not allege that they intend to engage in behavior that is even plausibly close to what the Attorney General describes as "threats of violence or efforts to intimidate individuals based

23

on their views." Memorandum, SJA 2; *see also* FBI email at 2, SJA 4 (tracking "threats of violence"). Absent some intent to engage in behavior that arguably falls within the scope of the Memorandum or the email—and there is none—plaintiffs lack standing to challenge their terms.

"There must be some desired conduct by the plaintiff that might trigger an enforcement action in the first place." *Matthew A. Goldstein, PLLC v. U.S. Dep't of State*, 851 F.3d 1, 4 (D.C. Cir. 2017). Plaintiffs have not stated an intent to engage in action that is not protected by the Constitution. *See, e.g.*, *Green*, 54 F.4th at 744 (reasoning that the government's agreement that plaintiff's proposed conduct would not violate a statute "ends any credible threat of prosecution" (quotation marks omitted)); *Matthew A. Goldstein*, 851 F.3d at 5 (finding lack of credible threat of enforcement from plaintiff's allegations of "vague and general descriptions of legal activities . . . none of which the [government] views as" illegal).

**c.** Additionally, this Court has made clear that "even if" a plaintiff's conduct arguably falls within the scope of the challenged enforcement policy, the plaintiff must still "evince [a] credible or imminent threat" that the government "will use its enforcement discretion against the

24

[p]laintiffs." *Hemp Indus. Ass'n*, 36 F.4th at 291. And "this court has been reluctant to find standing based on predictions of how agencies will exercise discretion in future proceedings." *Union of Concerned Scientists*, 998 F.3d at 930.

The Memorandum, which imposes no substantive restrictions, also does not institute or otherwise put in motion any enforcement actions against any private parties, including plaintiffs. As explained, the Memorandum calls for partnership and coordination between federal and nonfederal officials in assessing possible violence. *See* Memorandum, SJA 2. And the email simply sets up a way for the FBI to keep track of threats of violence against school officials. *See* FBI email at 2, SJA 4. Neither of these documents directs enforcement of any kind, much less against plaintiffs for the type of conduct that they state they have engaged in and will continue to engage in.

Nor have plaintiffs identified a "history of past enforcement" with respect to their conduct vis-à-vis school meetings or officials. *See Susan B. Anthony List*, 573 U.S. at 164 ("We have observed that past enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical." (quotation marks omitted)); *Clapper*, 568

25

U.S. at 411 (failure to offer evidence of allegedly chilling conduct "substantially undermines [plaintiffs'] standing theory").  On the contrary, plaintiff Cooper includes a video in the First Amended Complaint of her "passionately addressing the [Loudoun County Public Schools] school board in opposition" to its policies, without ever alleging any past, present, or future consequences of such actions.[2]  *See* First Am. Compl. ¶ 27, JA 10.

**d.**  Plaintiffs do not address standing until page 47 of their brief, and much of their six-page argument is simply a recitation of case law that fails to address the district court's two independent bases for concluding that plaintiffs lack standing.  *See Reporters Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 407 (D.C. Cir. 2017) (where appellant has "failed in its opening brief . . . to challenge" the district court's "rejection of its argument," the issue is "forfeited.").

---

[2] Plaintiff Brand alleges that she was targeted by a "Facebook group called the 'Anti-Racist Parents of Loudon County,'" First Am. Compl. ¶ 31, JA 11, and that she was "falsely labeled as 'Alt-Right' by some "government officials," First Am. Compl. ¶ 37, JA 13.  Brand does not specify which "government officials" so labeled her, much less that they were officials of the Department of Justice.  *See id.*  Nor does she allege that any enforcement action was taken against her because of that label.

The closest that plaintiffs come to suggesting any error in the district court's analysis of the claimed chilling injury is a passing assertion that they "are currently targets of investigation and data collecting." Pl. Br. 52; *see also* Pl. Br. 53. But as the district court explained—and plaintiffs do not attempt to dispute—"the complaint contains no such factual allegations." Mem. Op. 8, JA 44.[3] Nor, as discussed, does the Attorney General's Memorandum or FBI email direct any action against plaintiffs, let alone investigation or data collection. Moreover, even were the passing assertions in plaintiffs' brief actually contained in their complaint, such bare and conclusory references to surveillance and data collection would be insufficient to establish standing. *See Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 373-374 (6th Cir. 2011).

Plaintiffs' failure to identify any injury in fact is illustrated by their assertion that on one occasion "pursuant to the AG Policy, federal agents

---

[3] Plaintiffs' prayer for relief did twice reference "files or databases containing information about Plaintiffs." JA 33. But plaintiffs made no factual allegations that they are the subjects of such activity, beyond a generalized assertion that "[c]onducting investigations and surveillance . . . is what the FBI does." First Am. Compl. ¶ 96, JA 25.

in marked and unmarked vehicles were present at a school board meeting held in Fairfax, Virginia, causing further fear, intimidation, and a chilling effect on the free speech rights of parents and other concerned citizens, including Plaintiffs." Pl. Br. 19 n.5 (citing First Am. Compl. ¶ 87, JA 23). Myriad reasons exist for why law enforcement might be parked near a school. *See Kareem*, 986 F.3d at 866 (courts should not "'accept inferences that are unsupported by the facts set out in the complaint'" (quoting *Islamic Am. Relief Agency*, 477 F.3d at 732)). The car in question, according to the complaint, was a "marked Homeland Security vehicle[.]" First Am. Compl. ¶ 87, JA 23. In addressing this allegation, the district court explained that "the plaintiffs' photo of one marked Homeland Security vehicle outside a school board meeting—in a city that is neither Saline nor in Loudoun County—does not plausibly establish an inference that the Attorney General has taken or intends to take any kind of enforcement action." Mem. Op. 7, JA 43. Indeed, plaintiffs do not allege that they are residents of Fairfax County or were present at that meeting, and they make no allegations about what was being discussed at that meeting. Nor do they explain the purported connection between a parked Department of Homeland Security vehicle

28

and the asserted "AG Policy." Plaintiffs make no attempt to come to grips with the district court's reasoning. Nor in any event could they properly challenge the court's analysis with a cursory footnote in the Statement section of their brief. *See, e.g.*, *Federal Express Corp. v. U.S. Dep't of Commerce*, 39 F.4th 756, 766 n.2 (D.C. Cir. 2022).

2.    The district court also correctly held that plaintiffs have not properly alleged any "reputational harm." Mem. Op. 9-10, JA 45-46. Neither the Attorney General's Memorandum nor the FBI email even refers to plaintiffs, and plaintiffs have not alleged the existence of any Department statement or document that labels any of them as domestic terrorists. As the district court observed, "the Attorney General's memorandum does not apply to the plaintiffs' activities, and even if it did, the policy does not label anyone a domestic terrorist, as the plaintiffs suggest." Mem. Op. 9, JA 45 (citing First Am. Compl. ¶¶ 38, 65, JA 13, 18). "Nor does it create a reputational association." *Id.* The documents at issue note that "threats of violence" against school officials are not protected under the Constitution, and that the Department "takes these incidents seriously." *See* Memorandum, SJA 2; *see also* FBI email at 2, SJA 4. Plaintiffs cannot base standing on such a "(mis)characterization"

29

or "vast exaggeration" of government statements.  *Advanced Mgmt. Tech., Inc. v. Federal Aviation Admin.*, 311 F.3d 633, 636 (D.C. Cir. 2000); *see also, e.g., Oneida Indian Nation v. U.S. Dep't of the Interior*, 789 F. App'x 271, 277 (2d Cir. 2019) (unpublished) (distinguishing between cases where "the government attached a derogatory label to the plaintiff" and those where "the government has said nothing about the" plaintiff, "let alone anything derogatory").

Plaintiffs do not advance their argument by reiterating their conclusory assertions that "the challenged policy . . . designates Plaintiffs as criminal 'threats' and 'domestic terrorists,'" and "has harmed Plaintiffs' public reputation."  Pl. Br. 50; *see also* Pl. Br. 51.  The only reference to "domestic terrorism" cited by plaintiffs occurs not in any statement by the Department of Justice (or any other part of the government), but in a letter from a private organization that "raised concerns about 'acts of malice, violence, and threats against public school officials' and characterized these 'heinous actions' as 'equivalent to a form of domestic terrorism.'"  Mem. Op. 9, JA 45 (citation omitted).  As the district court observed, "[t]he letter was sent by a private entity unaffiliated with the Attorney General, and the Attorney General's

30

October 4 memorandum does not even mention the letter." *Id*. And even on its own terms, "the letter cannot fairly be interpreted as directed at the plaintiffs' activities[.]" *Id*.

Plaintiffs' unsupported suggestions that they have been labeled "domestic terrorists" (*see* Pl. Br. 50) are the kind of "threadbare," "conclusory" and "implausible" assertions that "do not suffice" to establish standing. *Kareem*, 986 F.3d at 864, 865-866 (alteration omitted). Plaintiffs' conclusory allegations resemble those in *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011), where the plaintiffs alleged that the Department of Justice and Department of Homeland Security had a "policy, practice, procedure, and/or custom" that "target[ed]" defendants "for disfavored treatment" because they were "deem[ed] to be 'rightwing extremists." *Id*. at 367 (quoting Am. Compl.). The plaintiffs further alleged that "according to [that] Policy, Plaintiffs are 'rightwing extremists.'" *Id*. at 373 (quoting Am. Compl.). The court held that "[w]ithout any plausible statements as to when, where, in what, or by whom such a designation was made, this allegation amounts to a 'naked assertion[] devoid of further factual enhancement'" that cannot serve as a basis for standing. *Id*. (second

31

alteration in original).  The district court correctly reached the same conclusion here.

Plaintiffs' reliance (Pl. Br. 50-51) on *Meese v. Keene*, 481 U.S. 465 (1987), further underscores the absence of any justiciable controversy.  In *Keene*, the plaintiff wished to exhibit three films that had been formally deemed "political propaganda" in a letter sent by the federal government to the film's distributor, and that accordingly had to be labeled and reported as "political propaganda" under a statute authorizing that designation.  *Id.* at 467-468, 467 n.1, 473.  The plaintiff established that "if he were to exhibit the films while they bore such characterization, his personal, political, and professional reputation would suffer and his ability to obtain re-election and to practice his profession would be impaired."  *Id.* at 473 (quoting *Keene v. Smith*, 569 F. Supp. 1513, 1515 (E.D. Cal. 1983)).  The plaintiff was thus put to a "Hobson's choice" between forgoing speech and suffering a concrete injury to his "reputation" and ongoing political "candidacy."  *Id.* at 475.  By contrast, plaintiffs are not regulated and have not alleged any designation as "threats" or "terrorists" or, in contrast to the plaintiff in *Meese*, any designation of them at all.  Nor are plaintiffs put to any kind of choice.

32

**B.    Plaintiffs Also Fail To Meet The Requirements Of Traceability And Redressability Or To Present A Ripe Controversy.**

Like the district court, this Court need not reach the other bases for concluding that plaintiffs' suit is improper.  Were the Court to do so, however, plaintiffs have not pled facts showing that any asserted injury is fairly traceable to the challenged action of the defendant, that the remedy plaintiffs seek would likely redress their claimed injuries, or that plaintiffs' claims are otherwise ripe for judicial review.

1.    Initially, because the Memorandum and the FBI email accurately reflect existing law and do not create new legal standards, plaintiffs cannot plausibly allege that these documents cause them injury.  The Memorandum notes that "[w]hile spirited debate about policy matters is protected under our Constitution, that protection does not extend to threats of violence or efforts to intimidate individuals based on their views."  Memorandum, SJA 2; *see also id.* ("The Department is steadfast in its commitment to protect all people in the United States from violence, threats of violence, and other forms of intimidation and harassment.").  The email similarly references only "threats of violence." FBI email at 2, SJA 4.  These materials simply articulate the principles

33

set out in governing Supreme Court law, which makes clear that prohibitions against "true threats"—to include threats of violence and intimidation—do not violate the First Amendment. *See, e.g.*, *Black*, 538 U.S. at 359 ("'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals."); *id.* ("[T]hreats of violence are outside the First Amendment") (alteration in original) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992)); *see also id.* at 460 ("Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death."). Plaintiffs cannot plausibly claim to be chilled by a Memorandum or email that accurately follows decisions of the Supreme Court on the scope of the First Amendment.

**2.** Plaintiffs similarly fail to establish redressability, *i.e.*, that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quotation marks omitted). Plaintiffs have alleged no facts

34

showing that vacatur of the Memorandum would be likely to remedy their purported chilling injury. Because the Memorandum does not change the law in any way, government officials may prosecute true threats in precisely the same way as they could before the Memorandum was ever issued. Vacating the Memorandum thus would not redress any potential future injury, inasmuch as the same set of legal permissions and prohibitions on plaintiffs' behavior would exist after the Memorandum was vacated as existed before. *See, e.g.*, *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 895 (9th Cir. 2007) (holding that the injury resulting from a permit procedure was not redressable where "[n]o change in the permit procedure would result in the approval of the permits it requests."); *see also Renne v. Geary*, 501 U.S. 312, 319 (1991) (noting serious questions of redressability where a statute not challenged in the suit may bar the same conduct). The FBI email—which simply facilitates the FBI's ability to keep track of threats of violence against school personnel—also does not alter the legal landscape, and thus vacatur would not remedy any purported chilling injury.

Nor would vacatur remedy plaintiffs' alleged reputational injury. Just as the Memorandum and email caused no reputational injury, their

35

recission would provide plaintiffs no relief. *See Vengalattore v. Cornell Univ.*, 36 F.4th 87, 113 (2d Cir. 2022) (where a government document "said nothing" about the plaintiff, invalidation of that document would not redress a reputational injury); *cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("[P]sychic satisfaction is not an acceptable Article III remedy . . . .").

    **3.**    Finally, even assuming that plaintiffs satisfied the core requirements of Article III standing, related principles of ripeness would warrant dismissal. The ripeness doctrine generally precludes federal courts from adjudicating claims involving "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (per curiam) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). The doctrine's focus on the likelihood of future events means that it overlaps to some degree with the imminent-injury element of Article III standing. *See Susan B. Anthony List*, 573 U.S. at 157 n.5; *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007). But the ripeness doctrine also focuses on "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *National Park Hosp. Ass'n v.*

36

*Department of the Interior*, 538 U.S. 803, 808 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

Plaintiffs' suit does not meet even the most basic prerequisites of fitness for judicial decision. A justiciable dispute must "admit[] of specific relief through a decree of a conclusive character" and may not ask a court to "advis[e] what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 241 (1937); *see id.* at 240 (distinguishing "[a] justiciable controversy" from a "dispute of a hypothetical or abstract character"). The nebulous and abstract nature of plaintiffs' claims runs afoul of those basic principles and risks inviting a court to issue an impermissible advisory opinion.

Plaintiffs' claims illustrate this Court's admonition that "[f]ederal courts cannot—and should not" engage in "what amounts to shadow boxing." *Devia v. Nuclear Regulatory Comm'n*, 492 F.3d 421, 424-425 (D.C. Cir. 2007) (quoting *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 72 (1st Cir. 2003)). Plaintiffs assert that the Attorney General has established a policy targeting certain speech or points of view. But, as discussed, the documents cited by plaintiffs establish no such policy and, indeed, make clear that any future policies the Department might seek

37

to establish must observe the critical distinction between actual "threats of violence or efforts to intimidate" and constitutionally protected speech. *See* Memorandum, SJA 2; FBI email, SJA 4. Plaintiffs' amorphous request for judicial guidance on these issues therefore "depends on future events that may never come to pass, or that may not occur in the form forecasted." *Devia*, 492 F.3d at 425 (quoting *McInnis-Misenor*, 319 F.3d at 72). And plaintiffs' claims also demonstrate that "[t]he operation" of a law is usually "better grasped when viewed in light of a particular application," *Texas*, 523 U.S. at 301; a concrete factual context will often facilitate a court's "ability to deal with the legal issues presented." *National Park Hosp. Ass'n*, 538 U.S. at 812 (quoting *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 82 (1978)); *see also, e.g., Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 163-164 (1967).

Furthermore, plaintiffs have not established the sort of hardship necessary for a ripe controversy. As discussed, neither the Attorney General's Memorandum nor the FBI email imposes restrictions on anyone, let alone on those who exercise their First Amendment rights. These documents also do not concern plaintiffs' intended conduct, which plaintiffs confirm does not include threatening criminal violence. In no

38

sense do they establish "'adverse effects of a strictly legal kind,'" which are "required for a showing of hardship." *National Park Hosp. Ass'n*, 538 U.S. at 809 (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733-734 (1998)).  Plaintiffs are "not required to engage in, or to refrain from, any conduct," due to the Department's actual or alleged actions. *Devia*, 492 F.3d at 427 (quoting *Atlantic States Legal Found. v. Envtl. Prot. Admin.*, 325 F.3d 281, 285 (D.C. Cir. 2003)).  Nor is any hardship to them "immediate and significant," because the Department has imposed no obligations on them.  *Id.* (quoting *Action All. of Senior Citizens of Greater Phila. V. Heckler*, 789 F.2d 931, 940 (D.C. Cir. 1986)).

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

MARK B. STERN

 /s/ John S. Koppel
JOHN S. KOPPEL
 (202) 514-2495
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7264*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530-0001*
  *Counsel for Defendant-Appellee*

MARCH 2023

40

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in 14-point Century Schoolbook, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,703 words, excluding exempt material, according to the count of Microsoft Word.

/s/ John S. Koppel
JOHN S. KOPPEL
*Counsel for Defendant-Appellee*
john.koppel@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2023, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, and that I served counsel for Appellant by the same means.


 /s/ John S. Koppel
JOHN S. KOPPEL
*Counsel for Defendant-Appellee*
john.koppel@usdoj.gov